## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Patrick Glenn, | ) | Case No. 02 B 40851 |
|       Debtor | ) | Chapter 7 |
| ———————————— | ) | Judge Bruce W. Black |
| | ) | |
| Frances Gecker, | ) | |
| Chapter 7 Trustee, | ) | |
|       Plaintiff, | ) | |
| | ) | |
|       v. | ) | |
| | ) | |
| James P. Gierczyk, | ) | Adversary No. 04 A 4493 |
|       Defendant. | ) | |

### Memorandum Opinion

This case is now before me on the plaintiff Trustee's motion to strike certain paragraphs of

the Defendant's amended answer and to strike the Defendant's jury demand on all remaining counts

of the complaint. The pertinent facts are not in dispute.

### FACTS

The Trustee filed a five-count complaint on December 29, 2004. Counts I and II alleged an

actual fraudulent transfer and a constructive fraudulent transfer, respectively. The Defendant timely

filed his answer on June, 10, 2005 and did not make a jury demand at that time or within the

subsequent ten days (as required by Rule 38 of the Federal Rules of Civil Procedure, as made

applicable through Rule 9015 of the Federal Rules of Bankruptcy Procedure).

On January 12, 2006, following a period of discovery, the Trustee filed an amended complaint seeking turnover of alleged property of the estate (Counts VI and VII) as well as alleging a willful violation of the automatic stay (Count VIII). On January 18, 2006, fact discovery was closed on Counts I and II. Thereafter, the Defendant timely filed his amended answer, which included revisions to the original answers to Counts I and II, two new affirmative defenses, and jury demands to Counts I and II as well as VI through VIII.

Counts I and II seek to recover alleged fraudulent transfers to the Defendant. For present purposes, the facts behind these two counts are not important. Counts VI seeks to recover the proceeds from the Defendant's sale of property that was held by "PGG, Inc." ("PGG"). PGG, an Illinois corporation, was involuntarily dissolved on April 1, 2000. When the Debtor's bankruptcy petition was filed, all the shares of the dissolved PGG were held, in equal parts, by the Debtor and the Defendant. Thereafter, the Trustee succeeded to the Debtor's interest pursuant to section 541(a) of the Bankruptcy Code.[1] Count VII seeks to recover the Debtor's shareholder interest in "PGI, Inc." ("PGI"). Count VIII seeks sanctions for the Defendant's alleged violation of the automatic stay stemming from the sale of property held by PGG.

## DISCUSSION

The jury demand for Counts VI through VIII was timely filed. The jury demand for Counts I and II was not. I will first consider the request to strike the demand which was timely, beginning with Count VIII.

## COUNT VIII

In Count VIII the Trustee seeks to strike the Defendant's jury demand for the Trustee's

---

[1]    11 U.S.C. § 101 *ff.* Any reference to "section" is a reference to the Bankruptcy Code unless another reference is stated.

-2-

charge of violations of the automatic stay, pursuant to section 362(k)(1).[2] Under section 362(k)(1),

"an individual injured by any willful violation of a stay provided by this section shall recover actual

damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover

punitive damages." Perhaps surprisingly, there is little case law on whether a party to such a dispute

is entitled to a jury trial.

The most recent opinion of the United States Supreme Court considering the right to jury

trial in the bankruptcy context is *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). In that case

the Court held that a party was guaranteed a jury trial in an adversary proceeding over an alleged

fraudulent transfer. The Court came to this conclusion even though Congress, in section 157 of the

Judicial Code,[3] had labeled fraudulent conveyance actions as core proceedings which could be

resolved by a bankruptcy judge. The *Granfinanciera* opinion suggests that the issue before me

regarding Count VIII may not be resolved simply by pointing out that section 362(k)(1) creates a

cause of action that was unknown to the common law:

> Although 'the thrust of the Amendment was to preserve the right to jury trial
> as it existed in 1791,' the Seventh Amendment also applies to actions brought to
> enforce statutory rights that are analogous to common-law causes of action ordinarily
> decided in English law courts in the late 18th century, as opposed to those
> customarily heard by courts of equity or admiralty.

*Id.* at 42.

The Defendant argues that, because the Trustee seeks money damages in Count VIII, the

count is analogous to a common law cause of action and he is, therefore, entitled to a jury trial.

Once again, the question is not so easily resolved under *Granfinanciera,* which sets forth the

---

[2]    Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8),
the former § 362(h) is now designated as § 362(k)(1). There is no meaningful distinction for present purposes.

[3]    28 U.S.C. § 157.

required analysis when considering whether a statutorily created cause of action is subject to a

Seventh Amendment right to jury trial:

> The form of our analysis is familiar. 'First, we compare the statutory action to
> 18th-century actions brought in the courts of England prior to the merger of the
> courts of law and equity. Second, we examine the remedy sought and determine
> whether it is legal or equitable in nature.' The second stage of this analysis is more
> important than the first. If, on balance, these two factors indicate that a party is
> entitled to a jury trial under the Seventh Amendment, we must decide whether
> Congress may assign and has assigned resolution of the relevant claim to a
> non-Article III adjudicative body that does not use a jury as factfinder.

*Id.* at 42 (internal citations and footnote omitted).

Regarding the first inquiry, the cause of action for violating the automatic stay under section

362(k)(1) does not appear to have had a counterpart in eighteenth century England. Indeed, I am

not aware of anything resembling the automatic stay in English law at that time, so it is not

surprising that there was no way to redress its violation. Thus, this first inquiry points to roots in

neither law nor equity. The second inquiry, directed at the remedy asserted, points definitely in this

case toward the courts of law rather than the courts of equity. The Trustee seeks money

damages–both compensatory and punitive. She does not seek an injunction or any other historically

equitable remedy. Accordingly, I conclude that these first two factors, on balance, indicate that the

Defendant is entitled under the Seventh Amendment to a jury trial on Count VIII. But the inquiry

under *Granfinanciera* is not over. I must next examine whether "Congress may assign and has

assigned" the matter to the bankruptcy court.

That Congress *has assigned* the section 362(k)(1) cause of action to this court appears

reasonably clear. Section 157(b)(2)(G) of the Judicial Code (28 U.S.C.) defines core matters to

include "motions to terminate, annul, or modify the automatic stay." Although motions to enforce

-4-

the stay are not listed, the omission does not appear significant.[4] Nevertheless, as *Granfinanciera* itself shows, mere inclusion as a core matter under section 157 of the Judicial Code does not end the jury trial inquiry. The cause of action at issue there–recovery of fraudulent conveyances–is also listed in section 157. *See* 28 U.S.C. § 157(b)(2)(H). Yet, the Court found that a jury trial is guaranteed in such cases.

Congressional treatment of violations of the automatic stay appears to differ from its treatment of fraudulent conveyances in at least one significant way: jurisdiction over fraudulent conveyance actions is granted concurrently to the District Court and the state courts, but jurisdiction over stay violations is granted exclusively to the District Court. See *Halas v. Platek*, 239 B.R. 784 (N.D.Ill. 1999). Accordingly, I conclude that Congress has attempted to assign violations of the automatic stay to the bankruptcy court.

It remains only to consider whether Congress *may assign* such matters to the bankruptcy court without running afoul of the Seventh Amendment. The *Granfinanciera* opinion succinctly states the issue there, which is the same as the issue here:

> The sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them.

*Granfinanciera* at 50. Citing one of the Court's earlier opinions, *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442 (1977), the opinion goes on to state that Congress may create new statutory causes of action analogous to common law actions and deny jury trials in them only "in cases where 'public rights' are litigated." *Granfinanciera* at 51. Thus, the question here becomes whether Count VIII asserts–and section 362(k)(1) protects–"public rights" rather than "private rights."

---

[4]    *See* 5 Collier on Bankruptcy, ¶ 362.11[3], at 362-126-126.1 (15th ed. Revised, 2005).

The "public rights" doctrine appears originally to have been confined to controversies to which the federal government was a party.[5] More recently, the doctrine has expanded. In *Granfinanciera* Justice Brennan's majority opinion equates "public rights" for jury trial purposes with the "public rights" doctrine in cases over whether Congress can assign matters to non-Article III tribunals. After referring to "that class of 'public rights' whose adjudication Congress may assign to administrative agencies or *courts of equity sitting without juries*," *id*. at 53 (emphasis added), the opinion summarizes the issue:

> The crucial question, in cases not involving the Federal Government, is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.'... If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial.

*Id*. at 54-55.

Applying this language to the case before me, I first note that Congress' power under Article I of the Constitution to create a bankruptcy system is without doubt. Further, the automatic stay is at the heart of the system created by the Bankruptcy Code. See *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir. 1991). I conclude that the rights created by section 362(k)(1) are so fundamental to our bankruptcy system that they are appropriately resolved by a bankruptcy judge sitting without a jury and that they should, therefore, be viewed as "public rights" as that term is used in *Granfinanciera*. Accordingly, I conclude that the Defendant is not entitled to a jury trial on Count VIII. The motion

---

[5]    Justice Scalia, concurring in part, laments what he describes as the majority's expansion of the Court's understanding of the public rights doctrine to include cases where the Federal Government is not a party. *Granfinanciera*. 492 U.S. at 65-71. Justice White, in dissent, laments what he considers the majority's narrowing of the Court's understanding of the public rights doctrine to exclude any cases in bankruptcy. *Id*, at 89-90.

to strike that part of the Defendant's jury demand will be **GRANTED**.

As noted above, there is a dearth of law on this issue. The Trustee did direct me to two cases specifically stating that a plaintiff has no right to a jury trial in a section 362(k) action, and I will mention them briefly. In *Periera v. Chapman*, 92 B.R. 903 (D. Cal. 1988), the court examined whether a federal civil rights claim[6] could be predicated on a violation of the automatic stay. The court found that this was not a legitimate basis for such a claim, and in comparing the two types of claims, the *Periera* court simply noted, without discussion, that no right to a jury exists regarding a section 362(k) claim. *Id.* at 908.

The second case cited by the Trustee is more instructive. In *Gordon v. Friedman's Inc. (In re Gordon)*, 209 B.R. 414 (Bankr. D. Miss. 1997), the court held that no right to a jury exists pursuant to section 362(k). *Id.* at 417. In *Gordon*, a debtor was the victim of malicious and threatening phone calls seeking to collect on debts. The debtor sought to file tort actions against the caller, alleging torts commonly giving rise to jury rights. The court found that the claims indeed would allow for a right to a jury, but for the fact of the bankruptcy. *Id.* The *Gordon* court utilized the *Granfinanciera* standard in arriving at its conclusion, and noted the expansion in the public rights doctrine. The *Gordon* court concluded that a suit under section 362(k) does fall within the expanded definition of "private rights" and held that there is no right to a jury trial on such a cause of action.

## THE TURNOVER COUNTS

In Counts VI and VII, the Trustee purports to seek "turnover" of alleged assets of the estate pursuant to section 542(a) which provides, in pertinent part: "an entity... in possession, custody, or

---

[6]   Under 42 U.S.C. § 1983.

control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title... shall deliver to the trustee, and account for, such property or the value of such property..." Requests for turnover orders are core proceedings within the jurisdiction of the bankruptcy courts. *See* 28 U.S.C. § 157(b)(2)(E).

Following the *Granfinanciera* analysis set forth above, courts routinely hold that actions pursuant to section 542 are equitable and do not give rise to the right to a jury. See *Keller v. Blinder*, 146 B.R. 28 (D. Colo. 1992); *In re Ackhoff*, 252 B.R. 396, 398 (Bankr. D. Mich. 2000); *Welt v. Leshin (In re Warmus)*, 252 B.R. 584, 587 (Bankr. D. Fla. 2000); see also *Stamps v. Sexton Bros. Tire Co. (In re Major Tire Co.)*, 64 Bankr. 305, 307 (Bankr. N.D. Ga. 1986) (a pre-*Granfinanciera* case, denying request for jury trial because "it cannot be argued that a turnover proceeding is anything but an equitable claim").

Normally, this would end any discussion of the Defendant's jury demand on Counts VI and VII. The Defendant claims, however, that Counts VI and VII are not turnover actions at all, but rather are demands at law for money damages based on the disputed value of the Debtor's shares in PGG and PGI. Because property of the bankruptcy estate is the *sine qua non* of an action for turnover, if the Defendant's premise is correct, his argument may be well-taken.

Section 541(a) provides that filing a bankruptcy petition creates the bankruptcy estate and that the property of that estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." The Bankruptcy Code does not define the legal and equitable interests that may be included in an estate. Instead, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. U.S.*, 440 U.S. 48, 54 (1979); *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1103-04 (7th Cir. 1991). Thus, we must look to Illinois law to see whether the Trustee has targeted property of the estate in

-8-

Counts VI and VII. If she has not, these two counts would not come within the scope of section 542,

and the Defendant's jury demand may have validity.

## COUNT VI

The Defendant argues that the turnover sought in Count VI, the value or proceeds from the

Defendant's sale of the assets of PGG, does not target property of the estate covered by section 541

because the assets belong to PGG and not to the Debtor or the Trustee. The Defendant acknowledges

that the Trustee is entitled to the Debtor's "stock interest" in the dissolved company (Deft's Resp.,

p. 10), but the Defendant argues that the assets of the dissolved company are not property of the

estate. Rather, the Defendant argues that Illinois law requires that the assets of a dissolved Illinois

corporation be held in trust for the benefit of the corporation's creditors.

The Defendant correctly argues, and the Trustee does not dispute, that a dissolved Illinois

corporation retains title to its assets. 805 ILCS § 5/12.30(c)(1). The Trustee responds that this does

not mean that shareholders have no interest in the dissolved corporation's assets, relying on *In re*

*Lipuma*, 167 B.R. 522 (Bankr. N.D. Ill. 1994).

In *Lipuma*, Judge Wedoff considered whether the assets of a dissolved Illinois corporation

were property of the estate subject to the protections of the automatic stay. Following an

examination of Illinois law on the issue, Judge Wedoff determined that, "Illinois courts have

consistently found that shareholders do have an interest in the assets of a dissolved corporation." *Id.*

at 525. He therefore concluded that the estate had an interest, "however characterized," in the assets

of the dissolved corporation. *Id.*

A panel of the Seventh Circuit has cited *Lipuma* with approval. In *In re Hancock*, 192 F.3d

1083 (7th Cir. 1999), the court first found that section 541(d) of the Bankruptcy Code includes a

debtor's shares of a corporation in the debtor's bankruptcy estate. *Id.* at 1086. After dissolution of an Illinois corporation, the court stated that the debtor's shares were "obliterated," but "provide [the debtor's] estate with an interest in [the dissolved corporation's] assets." *Id.* The court went on to conclude that the conduct of an attorney who sold the assets post-petition, without court approval, warranted sanctions against him.

Confronted with Seventh Circuit approval of *Lipuma*, the Defendant strives to distinguish the case. He correctly points out that *Lipuma* "does not identify the nature of the debtor-shareholder's interest" in the assets of the dissolved corporation. (Deft's Sur-Reply, p. 6). But, as Judge Wedoff noted, this is not the central consideration. The issue *Lipuma* considered was: "whether a debtor who is a shareholder in a dissolved Illinois corporation acquires an interest in the assets of the corporation so as to make those assets property of [the] bankruptcy estate." *Id.* at 524. Judge Wedoff concluded, "[I]t is the existence, not the nature, of that interest which is dispositive here." *Id.* at 525.

Notwithstanding *Lipuma's* conclusion that the mere existence of a property interest is dispositive, the Defendant argues that "unlike the *Lipuma* court, this court cannot rely on the mere existence of some undefined interest of the Debtor in PGG's property, because the nature of the Debtor's interest is pivotal." (Deft's Sur-Reply, p.7). The Defendant asserts the nature of the interest to be pivotal in conjunction with his argument that the assets of a dissolved corporation are held in trust for the benefit of that corporation's creditors.

The Defendant bases his argument on section 541(d) which says in pertinent part:

> property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

-10-

Because, the Defendant argues, Illinois law provides that the assets of a dissolved Illinois corporation, like PGG, are held in trust for the benefit of the creditors, any interest the Trustee has in the assets of PGG is merely a "bare legal" interest in that trust, and only that legal interest may be sought via turnover. Thus, the Trustee's turnover efforts in Count VI are actually "legal claims for money judgements based on the disputed value of the Debtor's stockholder interests."(Deft's Sur-Reply, p.7). The argument concludes that the Trustee may not, therefore, seek section 542 "turnover" of any interest greater than that bare legal interest in PGG; and her efforts to do so are actually mis-named actions at law for damages, giving rise to the right to a jury.[7]

The Defendant cites cases which characterize the property of a dissolved Illinois corporation as a trust held for the payment of corporate debts. *Blankenship v. Demmler Mfg. Co.*, 89 Ill. App. 3d 569, 572, 411 N.E.2d 1153 (Ill. App. Ct. 1980) and *Snyder v. Nathan*, 353 F.2d 3, 4 (7th Cir. 1965) do furnish some support for his argument that property of a dissolved corporation is held in trust for creditors. However, these cases also acknowledge that the shareholders have an interest in the "trust" holding the dissolved corporation's assets, but subject to the claims of the corporate creditors. That is, the shareholders have an interest beyond a mere legal interest in the trust. They have an *equity* interest in the trust corpus. *Blankenship*, at 572; *see also* BURGDOERFER, JERRY J. & MONSON, THOMAS A., ET AL.• ILLINOIS BUSINESS ENTITIES • 2-32 § 32.18 • 2005, (whatever assets a dissolved corporation has, belongs to the stockholders of the corporation, subject to the

---

[7]    The Trustee does not squarely address the Defendant's argument that the assets of PGG are held in trust pursuant to Illinois law regarding dissolved corporations. But consideration of the question is necessary to the question of property of the estate. None of the other possibilities *Lipuma* discusses regarding Illinois law on this point would preclude the PGG assets from becoming property of the estate, and there is no need to come to a decision regarding what Illinois' final position may be on the matter.

rights of creditors, or legal claims of third parties).[8]

Moreover, the Defendant's argument fails for a second reason. In *Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 156 (Bankr. N.D. Ill. 1995), Judge Barliant of this court considered application of section 541(d) to a constructive trust, as opposed to an express trust. He succinctly stated the usual situation:

> Section 541(d) describes the classic trust situation: a trustee holds bare legal title to property for the benefit of, and owes duties to, one or more beneficiaries who hold the equitable title or interest in the trust property or res. ... This separation or division of the legal and equitable titles or interests is one of the hallmarks of a trust relationship. Where the debtor's interest in property is limited to that of a trustee, no other interest (specifically, the beneficiary's equitable interest) in that property becomes part of the estate. That is, 'where the debtor holds bare legal title without an equitable interest, the estate acquires bare legal title without any equitable interest.'

*Id.* at 156 (citations omitted). But that case, like this case, did not involve an express trust. In *Foos*, after thorough analysis, Judge Barliant concluded that section 541(d) does not exclude from the estate an interest the debtor held in property subject to a constructive trust. After pointing out the significant differences between express and constructive trusts, he concluded that constructive trusts are not true trusts. Instead they are judicial remedies, and as such they are not amenable to the usual 541(d) analysis. In that case a third party sought to intervene in the bankruptcy case to assert a claim against property allegedly held in constructive trust. Judge Barliant denied intervention on the basis that the intervener "has no equitable or other property interest in these funds. Its interest is indistinguishable from that of the other creditors, and that interest is really an interest in the estate,

---

[8]    The Trustee points out that in Illinois, the "wind-up" period for dissolved corporations is limited to five years. *See In re Segno Communs., Inc.*, 264 B.R. 501, 507 (Bankr. N.D. Ill. 2001). And the five year limit on PGG's wind-up expired on April 1, 2005. But it does not necessarily follow that the post-wind-up shareholder no longer holds the assets of the dissolved corporation in trust for existing and identified creditors. Nor have I been presented with any evidence that claims are or are not currently being prosecuted against PGG assets, such that any trust might still exist pending the outcome of the dispute.

which is represented by the trustee." *Id.* at 160.

The case before me does not involve a constructive trust, but the case law which says that the assets of a dissolved corporation are held in trust for creditors creates a similar result. Certainly the "trust" is not an express trust. For the same reasons that 541(d) should not apply to constructive trusts, it should not apply here.

At least one court in the Northern District of Illinois has expressly found that a trust in which a debtor has at least a remainder interest becomes property of the estate, *and* is available to a trustee in an action for turnover. In *Bank of America, N.A. v. Moglia (in Re Outboard Marine Corp.)*, 278 B.R. 778, 783 (N.D. Ill. 2002), the court had to decide whether a debtor's estate had any interest in the corpus of a trust where the debtor was merely entitled to a remainder interest and it was undisputed that the primary beneficiaries' legitimate claims on the trust exceeded any remainder interest. *Id.* Here again, the court, echoing Judge Wedoff in *Lipuma*, found the specific statutory language of section 541(a)(1) to be crucial: "all legal or equitable interests of the debtor in property as of the commencement of the case."*Moglia*, at 783. The court found that the mere existence of *any interest* the debtor had in the property was the deciding factor in finding that the estate had a property interest in the trust corpus. *Id.* [9]

In this case, as in *Moglia*, the defendant states that the "claims of PGG's creditors are exceeded by the value of the [assets of PGG]." (Deft's Answer to Amended Complaint, p. 22). But this is not the important consideration. The *Moglia* court noted, "[b]y focusing exclusively on the *post facto* non-existence of funds available from [the debtor]'s remainder interest, the [b]eneficiaries

---

[9]    As a potentially anticipatory aside, the *Moglia* court, in reviewing the bankruptcy court's decision, upheld the bankruptcy court's "core jurisdiction" to determine the extent, priority and validity of the liens on the trust *res*. *Id.*

have ignored the remainder *interest* itself... [w]hether or not [that] interest produces any actual money is beside the point." *Moglia*, at 783 (emphasis in original).

I agree with the reasoning in *Moglia* and therefore conclude that the validity of the "trust-fund theory" of the assets of a dissolved corporation in Illinois is irrelevant to whether those assets may be part of a debtor's estate in bankruptcy. Even accepting that theory, the Debtor retains at least a residual equity interest in the assets of PGG. The very fact of the Debtor's interest is dispositive. The question of whether there eventually will be any actual money as a result of that interest is "beside the point."[10]

Both *Moglia*'s and *Lipuma*'s interpretation of property of the estate under section 541 is persuasive, and both convince me that the Trustee's turnover demand in Count VI targets assets of the estate. Accordingly, I conclude that the existence of the Debtor's interest is the controlling factor in determining whether the estate has a property interest in the assets of the dissolved PGG. That interest makes the assets of the dissolved PGG a proper target for a turnover action. Therefore, the claim is purely equitable and the Defendant is not entitled to a jury. The Trustee's motion to strike the Defendant's jury demand for Count VI is **GRANTED**.[11]

## COUNT VII

[10]  The Defendant additionally cites *In re Roti*, 271 B.R. 281, 291 (Bankr. N.D. Ill. 2002), for the proposition that turnover is not intended to determine disputed rights to property. (Def't's Resp. p.10). However, this is true only where the action does not involve property of the estate, at which point the dispute is beyond the jurisdiction of the bankruptcy courts. *See In re Gallucci*, 931 F.2d 738, 742 (11th Cir. 1991) (the case *In re Roti* ultimately relies on for the proposition); *see also Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (further stating that "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets").

[11]  Because I find there is no right to a jury on this ground, there is no need to examine the Trustee's contention that the Defendant has submitted to this court's equitable jurisdiction by asserting claims against the estate in the form of "set-offs" against the Trustee's claims. (Obviously, the Defendant disagrees with this characterizations of his "statutory defenses" to the Trustee's claims).

Count VII seeks the "Debtor's shareholder interest in PGI." (Trustee's Reply, p. 8). The Defendant acknowledges that "the Trustee is entitled to the Debtor's stock interest in ... PGI." (Deft's Resp., p. 10). Count VII is a traditional and uncontroversial turnover demand, vis-a-vis a defendant's right to a jury, and the Defendant makes no serious effort to deny the Trustee's motion to strike the jury demand on this count. For the reasons stated in the discussion of Count VI, the Trustee's motion to strike the Defendant's jury demand in Count VII is **GRANTED**.

## COUNTS I and II

Having concluded that the Defendant is not entitled to a jury on those counts for which he made a timely jury demand, I now turn to the two counts on which his jury demands were not timely. Pursuant to Fed. R. Bank. P 9015, Fed. R. Civ. P. 38 applies to jury demands in adversary proceedings. Rule 38(b) requires that a jury demand be filed no later than ten days after the party's answer. In this case, the Defendant admits that he did not timely demand a jury regarding Counts I and II. The Defendant asks me to exercise my discretion pursuant to Fed. R. Civ. P. 39(b), and permit his untimely jury demand. Rule 39(b) provides:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

Although the legal standards for exercising my discretion on this matter have been evolving, these rules have been clarified by the Seventh Circuit in *Members v. Paige*, 140 F.3d 699, 703 (7th Cir. 1998). Based on that case, I conclude that I am not required to find "compelling reasons" to deny the Defendant a jury trial in these circumstances. In exercising my discretion, though, I think

-15-

it is appropriate to use the five factors used by Judge Schmetterer in *J.P. Morgan Partners v. Kelley (In re HA-LO Indus.)*, 326 B.R. 116, 122 (Bankr. N.D. Ill. 2005):

> In exercising discretion, five factors should be considered and balanced: (1) whether the issues involved are appropriately tried before a jury; (2) whether the court's schedule or that of the adverse party will be disrupted; (3) the degree of prejudice to the opposing party; (4) the length of the delay; and (5) the reason for the moving party's tardiness in demanding a jury trial.

Regarding the first factor, the issues here are obviously complex, as evidenced by the discussion of Count VI. Although these issues are routine for bankruptcy judges, they would be difficult for most jury members to understand. On balance, I conclude that the complexity of these issues weighs in favor of the Trustee on this first factor.

Second, the court's schedule would not be dramatically affected one way or another by the jury demand, and I give this little weight. The opposing party, however, argues she will be greatly affected. The scheduling demands of a jury trial are necessarily greater than those of a bench trial. This factor weighs in favor of the Trustee.

The question of prejudice to the Trustee is the third factor. Although fact discovery has been completed regarding these two counts, expert discovery remains and dispositive motions may yet be filed. Cost is a legitimate issue, particularly as pertains to a trustee seeking to conserve assets of the estate. The extra time required to try a case before a jury adds litigation costs. This factor slightly weighs in favor of the Trustee.

The six month delay in making a jury demand, during which time fact discovery was completed strikes me as unnecessarily long, and this factor weighs in favor of the Trustee.

Regarding the fifth factor, no convincing answer has been provided as to why there was any delay in a jury demand at all. The Defendant's answer to this question boils down to the argument

that the Trustee's additional Counts VI through VIII alleged "new facts" that caused him to reconsider his interest in having a jury hear Counts I and II. This is insufficient. The Trustee alleges, in respect to this last factor, that the Defendant is engaging in "forum shopping" and "obstructive tactics." (Trustee's Reply, p. 6). I need not decide that, but in the absence of a more convincing answer to the question of the delayed jury demand, I find this factor weighs in favor of the Trustee.

Finally, having decided that the Defendant is not entitled to a jury trial on the newly filed counts, it would make little sense to grant a jury trial here and thus require two trials rather than one.

On balance, considering of all the factors, I decline to exercise my discretion to permit a late jury demand. Therefore the Trustee's motion to strike the jury demands on Counts I and II is **GRANTED**.

**TRUSTEE'S MOTION TO STRIKE CERTAIN ANSWERS OF THE DEFENDANT**

The Trustee's motion also seeks to strike paragraphs 14-25 and 40-46 of the Defendant's amended answer. The Defendant timely filed this answer on February 23, 2005. Expert discovery has not yet commenced on Counts I and II, and no discovery has commenced on Counts VI through VIII. Under these circumstances, the parties agree that it is within my discretion to allow the proposed amendments to the Defendant's original answer. "Leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1961) (internal quotes omitted). "Motions to strike are not favored and are not ordinarily granted unless the language in the pleading at issue both has no possible relation to the controversy and is clearly prejudicial." *Raleigh v. Mid Am. Nat'l Bank & Trust Co. (In re Stoecker)*, 131 B.R. 979, 982 (Bankr. N.D. Ill. 1991). The Trustee has not convinced me that there is any reason to deny these amendments.

The Defendant argues that the amendments conform to the evidence produced to the Trustee in discovery. I will be able to sort out at trial or on dispositive motions whether the evidence indeed does support the amended answers, and I believe justice requires allowing the Defendant to plead the answer to the complaint he feels most conforms to his contemplation of the evidence. I am sensitive to the fact that any amendment to an answer may require additional discovery. I will, of course, entertain any requests the Trustee may bring requiring additional discovery regarding this – or any other – issue. Thus I conclude that the Amended Answer should be permitted to stand as filed. Therefore the Trustee's motion to strike portions of the amended answer is **DENIED**.

## CONCLUSION

For the reasons stated above, the Trustee's motion to strike the jury demand is **GRANTED**, and her motion to strike portions of the amended answer is **DENIED**. This memorandum opinion will constitute findings of fact and conclusions of law, a separate order will be entered.

DATE: May 24, 2006

Bruce W. Black
United States Bankruptcy Judge

-18-